# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-270

AMERICAN ZURICH INS. CO.

VERSUS

CATERPILLAR, INC.

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 84626, DIV. B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Patrick J. O'Cain
C. G. Norwood Jr.
Deirdre C. McGlinchey
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
(504) 586-1200
COUNSEL FOR DEFENDANT/APPELLEE:
    Caterpillar, Inc.

Richard E. King
Cherrell R. Simms
Galloway, Johnson, Tompkins, Burr & Smith
701 Poydras St., Suite 4040
New Orleans, LA 70139
(504) 525-6802
COUNSEL FOR PLAINTIFF/APPELLANT:
    American Zurich Ins. Co.

**GREMILLION, Judge.**

The plaintiff, American Zurich Insurance Company (Zurich), appeals the trial court's ruling granting the defendant, Caterpillar, Inc.'s (Caterpillar), peremptory exception of prescription and motion for summary judgment. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of a Kenworth truck fire that occurred on April 7, 2010. Caterpillar manufactured the truck's engine. Zurich insured the vehicle and learned of the accident on the date it occurred, April 7, 2010, as evidenced by the date of its first entry upon opening its loss file. According to its entry on the following day, April 8, 2010, Zurich knew that the vehicle had burst into flames on the highway. Zurich paid its insured $76,930.74 for the total loss of the truck and sought reimbursement from Caterpillar for an allegedly defective engine.

On April 6, 2011, Zurich fax-filed a petition for damages against Caterpillar in the Eighteenth Judicial District Court for the Parish of West Baton Rouge. Caterpillar was served with the petition on April 26, 2011. However, there is no dispute that West Baton Rouge Parish was an improper venue for the lawsuit. On July 27, 2011, the trial court in West Baton Rouge Parish sustained Caterpillar's venue exception and granted Zurich's motion to transfer the case to the Tenth Judicial Court for the Parish of Natchitoches.

On September 2, 2011, Caterpillar filed a Peremptory Exception of Prescription and/or Motion for Summary Judgment. Following a November 10, 2011 hearing, the trial court granted Caterpillar's exception and motion for summary judgment and dismissed Zurich's claims against it. Zurich now appeals.

**ISSUES**

Zurich assigns as error:

1. The Appellant's claim for damages for the defective engine did not prescribe on April 7, 2011.

2. There are genuine issues of material fact that supports [sic] the Appellant's breach of contract claim against Appellee, which is mutually exclusive from Appellant's products liability claim against Appellee.

## DISCUSSION

*Prescription*

The central issue in this case is whether Zurich's claim against Caterpillar has prescribed. We review the trial court's findings on an exception of prescription using the manifest error standard of review. *London Towne Condo. Homeowner's Ass'n v. London Towne Co.,* 06-401 (La. 10/17/06), 939 So.2d 1227.

Zurich claims that prescription began to toll on April 26, 2010, when it was made aware of a possible defect in the Caterpillar engine by Centro Inspection Agency, whom it hired to investigate the claim. Thus, Zurich argues that the April 26, 2011 service upon Caterpillar was timely. Zurich further argues that its claims are brought pursuant to the Louisiana Products Liability Act, La.R.S. 9:2800.51, et. seq., and the one year prescriptive period on such claims does not begin to toll until the date the victim became aware of the defect. The trial court agreed with Caterpillar that prescription began to toll on the date of the truck fire, April 7, 2010.

A claimant has one year "from the day injury or damage is sustained" in which to file its action. La.Civ.Code art. 3492. This prescriptive period applies to claims under the LPLA. *See LaPlace Concrete, Inc.*, *v. Stallings Const. Co. Inc.*, 01-131 (La.App. 4 Cir. 12/5/01), 803 So.2d 1015. Louisiana Civil Code Article 3462 states (emphasis added):

Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. *If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.*

The prevailing wisdom is that prescription begins to run when the defect manifests itself, not on the date the underlying cause of the defect is found. *See Lee v. Equitable Life Assur. Soc'y of U.S.*, 391 So.2d 37 (La.App. 3 Cir. 1980), *writ denied*, 395 So.2d 1363 (La.1981); *David v. Meek,* 97-523 (La.App. 1 Cir. 4/8/98), 710 So.2d 1160.

Zurich argues that *contra non valentum* applies to prevent the running of prescription. In *Cartwright v. Chrysler Corp.*, 255 La. 597, 603-04, 232 So.2d 285, 287 (La.1970), the supreme court set forth the often-cited standard for determining constructive knowledge in a *contra non valentum* case:

Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.

However, there is no need to ponder when Zurich had constructive knowledge since it is clear from the record that it had actual knowledge on the date of the accident or at least the day after. The evidence in the record supports a finding that Zurich knew of the complete loss of the truck that caught fire while in motion which the driver himself attributed to engine malfunction. Knowledge that a vehicle that spontaneously catches on fire, in general, would be sufficient to put the most unobservant person on notice of a major defect. That, coupled with the driver's own belief that it was caused by an engine malfunction, leads to the conclusion that Zurich had actual knowledge. For these reasons, Zurich's feeble

3

argument that *contra non valentum* should apply to this case fails. The trial court, in its extensive written reasons for judgment found:

> It is clear from the evidence presented, especially information included in Zurich's responses to request for production of documents (exhibit G - AZIC 00087-00089), that on the date of the incident, the driver of the truck and his employer, the insured, were aware of incident when it happened. The insured, or its employee, reported to Zurich that her staff went immediately to the accident site. She said the driver reported that he was driving down the road and heard a pop, and then saw flames. An April 8, [2010], notation states that the driver reported that he heard a pop from the front of the vehicle and thought he had a blow out as the vehicle started shaking; the driver reported that he believed a rod came out of the engine block, struck the fuel lines, and this started the fire. As a matter of law, prescription began to run on the date of the engine failure and fire.

Having reviewed the record, we find no manifest error in the trial court's ruling. Reasonable people could easily conclude that the prescriptive period began to toll on the date of fire, April 7, 2010; thus, service upon Caterpillar on April 26, 2011, was insufficient to interrupt prescription, and Zurich's claims against Caterpillar are prescribed. This assignment of error is without merit.

*Breach of Contract*

Zurich contends that it has a separate cause of action for failure to perform under a service contract which is subject to a ten year prescriptive period pursuant to La.Civ.Code art. 3499, which provides that "a personal action is subject to a liberative prescription of ten years." The trial court found that Zurich's breach of contract claim was precluded by the LPLA, La.R.S. 9:2800.52, which provides the exclusive theories of liability for claims against a manufacturer for damage caused by a product.

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98–2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id*. This inquiry seeks to determine whether any genuine issues of

4

material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). This means that judgment must be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.*, 97–318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97–2737 (La. 1/16/98), 706 So.2d 979. In deciding whether facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

Louisiana Revised Statute 9:2800.52 states in part:

> This Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter. Conduct or circumstances that result in liability under this Chapter are "fault" within the meaning of Civil Code Article 2315.

"Damage" is defined in La.R.S. 9:2800.53(5) as:

> [A]ll damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1, and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of title VII of Book III of the Civil Code, entitled "Redhibition," does not allow recovery for such damage or economic loss.

Whether Zurich has a valid breach of contract claim against Caterpillar is a question of law. We agree with the trial court that there is no genuine issue of fact that Zurich will be unable to sustain a claim against Caterpillar for breach of

5

contract. The LPLA, which Zurich concedes applies, preempts any other claims it may have based on the defective engine. The LPLA is the exclusive remedy against a manufacturer of a defective product. *See Haley v. Wellington Specialty Ins. Co.*, 44,014 (La.App. 2 Cir. 2/25/09), 4 So.3d 307, *writ denied*, 09-532 (La. 4/17/09), 6 So.3d 800; *Bernard v. Ferrellgas, Inc.,* 96-621 (La.App. 3 Cir. 5/5/97), 689 So.2d 554.

Two recent cases address the issue of whether a breach of contract claim can survive independent of an LPLA claim. In *Hollybrook Cottonseed Processing, LLC v. Carver,Inc.*, No. 09-0750, 2010 WL 892869 at *6 (W.D. La. 3/11/2010), it was noted that courts have been "inconsistent and unclear in determining when and if a buyer can bring a breach of contract claim against a manufacturer." The court went on to hold however:

> While the exclusivity provision of the LPLA leaves no doubt breach of contract claims against manufacturers for damages caused by their products are subsumed by the LPLA, in cases where a specific part of the injury *is caused only by the breach of contract, and not by the product itself,* a buyer *might* be able to bring both types of claims against a manufacturer. The Court holds that in the limited circumstances where a buyer sues a manufacturer for economic damages not covered in redhibition and not caused by the product itself, it may bring a breach of contract claim for those damages, on its own or in addition to a claim for other damages under the LPLA or redhibition.

*Id.* at *7 (emphasis added).

Zurich makes no claims that fall within the exception. All of its claims arise out of the allegedly defective engine. A similar finding was recently made in *Jack B. Harper Contractor, Inc. v. United Fiberglass of America, Inc.*, No. 11-20, 2012 WL 2087394 (E.D. La. 6/8/2012), where the court stated:

> This Court agrees with previous Courts that, in general, the exclusivity provision of the LPLA subsumes breach of contract claims. On the other hand, in cases where a specific part of the injury is caused *only by the breach of contract and not by the product itself*,

a buyer *may* be able to bring both types of claims against a manufacturer.

*Id.* at *6 (emphasis added).

In *Harper,* the court found that there was an issue of fact whether the plaintiff had a valid claim for breach of contract. There is no similar issue here. Zurich argues that Caterpillar failed to perform under the Service Contract (an extended service contract that provides five-year and/or 300,000 mile overhaul protection/extended service coverage). Zurich makes no valid attempt to distinguish how a defective engine would be anything but subsumed under the LPLA. There simply is no claim relative to the service contract that would withstand distinction from a straight-forward defective product claim. The trial court did not err in its finding that there are no genuine issues of material fact regarding the breach of contract claim. Accordingly, this assignment is without merit.

## CONCLUSION

The judgment of the trial court granting the defendant-appellee's peremptory exception of prescription and motion for summary judgment is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, American Zurich Insurance Company.

**AFFIRMED**.

7